**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRISON LEGAL NEWS, a Washington
corporation; ROLLIN A. WRIGHT,
               *Plaintiffs-Appellees,*

        v.

JOSEPH LEHMAN, in his official and
individual capacities; ELDON VAIL,
in his official and individual
capacities; CAROL PORTER, in her
official and individual capacities;
JAMES BLODGETT, Superintendent,
in his official and individual
capacities; KAY WALTER, in her
official and individual capacities;
ALICE PAYNE, in her official and
individual capacities; MAGGIE
MILLER-STOUT, in her official and
individual capacities; RICHARD
MORGAN, in his official and
individual capacities; BOB MOORE,
in his official and individual
capacities; JOHN LAMBERT, in his
official and individual capacities;
DOUG WADDINGTON, in his official
and individual capacities; BELINDA
D. STEWART, in her official and
individual capacities,
            *Defendants-Appellants.*

No. 03-35608

D.C. No.
CV-01-01911-RSL

1283

PRISON LEGAL NEWS, a Washington
corporation; ROLLIN A. WRIGHT,
                    *Plaintiffs-Appellants,*

                    v.

JOSEPH LEHMAN, in his official and
individual capacities; ELDON VAIL,
in his official and individual
capacities; CAROL PORTER, in her
official and individual capacities;
JAMES BLODGETT, Superintendent,
in his official and individual
capacities; KAY WALTER, in her
official and individual capacities;
ALICE PAYNE, in her official and
individual capacities; MAGGIE
MILLER-STOUT, in her official and
individual capacities; RICHARD
MORGAN, in his official and
individual capacities; BOB MOORE,
in his official and individual
capacities; JOHN LAMBERT, in his
official and individual capacities;
DOUG WADDINGTON, in his official
and individual capacities; BELINDA
D. STEWART, in her official and
individual capacities; SCOTT
FRAKES, in his official and
individual capacities,
                    *Defendants-Appellees.*

No. 04-35185

D.C. No.
CV-01-01911-RSL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
November 1, 2004—Seattle, Washington

Filed February 1, 2005

Before: Arthur L. Alarcón, William A. Fletcher, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Alarcón

**COUNSEL**

Shannon Elizabeth Inglis and Carol A. Murphy, Office of the Washington Attorney General, Olympia, Washington, for the defendants-appellants.

Jesse Andrew Wing, MacDonald, Hoague & Bayless, Seattle, Washington, for the plaintiffs-appellees.

Steven R. Powers, Office of the Oregon Attorney General, Salem, Oregon, for the amicus.

## OPINION

ALARCÓN, Circuit Judge:

The Washington Department of Corrections ("DOC") appeals from the grant of summary judgment and permanent injunctive relief on Prison Legal News and Rollin A. Wright's (collectively "PLN") claim that the DOC prohibition against the receipt by inmates of non-subscription bulk mail and catalogs violates the First and Fourteenth Amendments. The thirteen individual defendants ("prison officials") appeal from the denial of their motion for summary judgment based on their defense of qualified immunity from damages as a result of restricting inmates from receiving third-party legal materials.

PLN has filed a cross-appeal from the order granting summary judgment to the thirteen individuals based on their defense of qualified immunity regarding PLN's claim that the defendants violated its constitutional rights.

We affirm the district court's decision. Under the test laid out in *Turner v. Safley,* 482 U.S. 78, 89-90 (1987), the DOC's ban on non-subscription bulk mail and catalogs is not rationally related to a legitimate penological interest and is therefore unconstitutional. Although the ban violates PLN's First Amendment rights, the prison officials are entitled to qualified immunity because their actions did not violate clearly established law. We also hold that the district court did not err by declining to grant qualified immunity to the officials for their policies regarding third-party legal materials. If the evi-

dence produced at trial demonstrates that the DOC applied its policy in a discriminatory fashion based on the content of the legal materials as PLN contends, the prison officials are not entitled to qualified immunity because they violated clearly established law. The district court correctly concluded that this disputed factual question must be resolved at trial.

## I

Prison Legal News is a Washington nonprofit corporation that publishes and distributes publications regarding legal issues of interest to inmates, such as prisoners' rights. It publishes a monthly subscription magazine, which has 3,000 subscribers across the United States, including 120 who are inmates in Washington's state correctional facilities. Its editor, Paul Wright, is an inmate in a Washington state correctional facility.

The prison officials are policymaking employees in the DOC. The DOC operates fifteen Washington correctional institutions that house 16,000 inmates. The DOC employs approximately one mailroom staff person per 600 persons served at each institution, including inmates and staff.

This is the fourth case since 1996 brought by PLN against the DOC. The previous cases are *Miniken v. Walter,* 978 F. Supp. 1356 (E.D. Wash. 1997), *MacFarlane v. Walter,* No. 96-cv-03102-LRS (E.D. Wash. 1997), and *Humanists of Washington v. Lehman,* No. 97-cv-05499-FDB-JKA (W.D. Wash. 1999).

The DOC's Policy Directive 450.100, entitled "Mail for Offenders," sets forth rules and procedures regarding mail delivery to inmates. The district court summarized the portions relevant to this appeal:

> First, the directive prohibits inmates from receiving "bulk mail" unless that bulk mail is a subscription

publication. In contrast to first and second class mail rejected due to prohibited content, "[n]o rejection notice is required for bulk mail that is not a subscription publication." Additionally, inmates are not permitted to receive catalogs by mail, whether sent first class, second class, or at a "bulk mail" rate. If mail other than that constituting bulk mail is rejected for delivery, inmates receive notice of the rejection and may appeal the decision.

*Prison Legal News v. Lehman,* 272 F. Supp. 2d 1151, 1154 (W.D. Wash. 2003) (alterations in original) (citations omitted) ("*PLN II*"). The court further explained, "The Department defines bulk mail as [m]ail which is clearly marked non-profit or bulk rate. This type of mail is also referred to as bulk business mail or advertising mail and includes, but is not limited to, catalogs and circulars." *Id.* at n.2 (alterations in original) (citations and quotations omitted). "The Department defines 'catalog' as '[a] publication which is predominantly or substantially focused on offering items for sale.' " *Id.* at n.3 (alterations in original) (citations omitted). The court also explained the DOC's policy regarding third-party legal material:

> DOC 450.100 prohibits the delivery of "[m]ail containing information which, if communicated, could create a risk of violence and/or physical harm to any person . . . .
> Third-party legal materials-Must meet the following requirements
>
> a.   Mail which consists of judicial opinions (published and unpublished), reports and recommendations, orders, complaints or answers, settlement agreements, class action notices, legal briefs and memoranda, and motions, and
>
> b.   Mail which otherwise complies with DOC Policy 450.100 Mail for Offenders and has been

> stamped "approved third-party legal materials" by correctional staff.

*Id.* at 1161 (citations omitted).

PLN sued the DOC under 42 U.S.C. § 1983, arguing that these regulations violated its First and Fourteenth Amendment rights. The district court held that the DOC's policies regarding non subscription bulk mail and catalogs violated PLN's First Amendment rights, *id.* at 1159, but that the officials were entitled to qualified immunity for their decisions. *Id.* at 1163. The district court further concluded that summary judgment was not appropriate for the claim regarding third-party legal material, because "resolution of these issues requires highly fact-dependent inquiries that . . . are not amenable to summary determination." *Id.* at 1162. Furthermore, the district court limited its finding of qualified immunity to the issues resolved on summary judgment, and expressed no opinion regarding whether the officials will be entitled to qualified immunity if PLN should ultimately prevail on its claim regarding third-party legal materials. *Id.* at 1163 n.14.

## II

The district court had jurisdiction under 42 U.S.C. § 1983. We have jurisdiction to review the district court's decision to grant summary judgment for PLN and its decision to grant qualified immunity to defendants regarding PLN's claims under 28 U.S.C. § 1291. We have jurisdiction to review the grant of permanent injunctive relief to PLN relating to catalogs and non-subscription bulk mail and notice under 28 U.S.C. § 1292(a)(1).

We have jurisdiction under 28 U.S.C. § 1291 over an interlocutory appeal regarding the issue of qualified immunity. *Wilkins v. City of Oakland,* 350 F.3d 949, 951 (9th Cir. 2003) (citing *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) (per curiam); *Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th

Cir. 2000)). "In such circumstances, however, appellate review is generally limited to issues of law, and 'does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact.'" *Wilkins,* 350 F.3d at 951 (quoting *Jeffers,* 267 F.3d at 903) (internal citation omitted). "Where disputed facts exist, we will determine if the denial of qualified immunity was proper by assuming that the version of events offered by the nonmoving party is correct." *Id.*

The parties dispute whether we have jurisdiction over the officials' assertion that the district court improperly denied qualified immunity from the claim relating to third-party legal materials. PLN argues that the officials waived their qualified immunity defense as to the third-party legal material claim because they only asserted qualified immunity with regard to the non-subscription bulk mail and catalog claims. We disagree. In their motion for summary judgment, the officials ask for qualified immunity, and do not specifically limit their request to the non-subscription bulk mail and catalog claims. The heading on that portion of their argument is "Defendants Should be Entitled to Qualified Immunity From Damages." The section of their motion addressing qualified immunity reads in its entirety:

> In the event that this Court determines plaintiffs' constitutional rights were violated, defendants should be entitled to qualified immunity from damages. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Based on relevant case law in this and other circuits, as well as unpublished Washington opinions, defendants reasonably believed that their policy, and actions in adopting and enforcing the catalog and non-subscription bulk mail restrictions were lawful. *See Sorrels v. McKee,* 290 F.3d 965, 971 (9th. Cir. 2002) (citing *Cook,* 238 F.3d at 1152) (unpublished district court decisions may be

considered for purposes of determining qualified immunity).

While the second sentence supports only their arguments based on the non-subscription bulk mail and catalog claims, the first sentence of the argument does not limit the request in any way. We are persuaded that the officials did not waive their argument that they are entitled to qualified immunity from the claim concerning third-party legal materials.

PLN also argues that because the officials dispute the factual merits of the third-party legal materials claim, rather than the legal basis, that claim is outside the scope of this Court's interlocutory jurisdiction. We disagree. As noted above, cases in this circuit establish that when disputed facts exist, we have jurisdiction to decide the claim, but must assume that the version of events offered by the nonmoving party is correct. *Wilkins,* 350 F.3d at 951. Therefore, we have jurisdiction to hear the appeal of the district court's denial of qualified immunity.

## III

We review *de novo* a district court's decision to grant or deny summary judgment. *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir. 2000). We apply the same standard used by the trial court under Rule 56 of the Federal Rules of Civil Procedure. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). We also review a grant or denial of qualified immunity *de novo. Bahrampour v. Lampert*, 356 F.3d 969, 976 (9th Cir. 2004).

## A

[1] We first consider whether the district court correctly found that PLN was entitled to summary judgment on its

claims that the ban on non-subscription bulk mail and catalogs was unconstitutional. In *Prison Legal News v. Cook*, 238 F.3d 1145 (9th Cir. 2001) ("*PLN I*"), we held that publishers and prisoners have a constitutionally protected right to receive subscription non-profit bulk mail and that a ban on bulk mail was unconstitutional as applied to such mail. *Id.* at 1152-53. In *Morrison,* we held that a similar ban on subscription for-profit bulk mail was likewise unconstitutional. *Morrison v. Hall,* 261 F.3d 896 (9th Cir. 2001). In this case, we are squarely presented with the question of whether a ban on non-subscription bulk mail and catalogs is also unconstitutional.

**[2]** Publishers have a First Amendment right to communicate with prisoners by mail, and inmates have a First Amendment right to receive this mail. *PLN I*, 238 F.3d at 1149 (citing *Thornburgh v. Abbott,* 490 U.S. 401, 408 (1989)). But this right is subject to "substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security." *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) (citations omitted). In order for the DOC's ban on non-subscription bulk mail to be upheld, it must be "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. at 89.

In *Turner*, the Supreme Court laid out a four-factor test to determine whether a prison regulation is "reasonably related to legitimate penological interests":

> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective, (2) whether there are alternative avenues that remain open to the inmates to exercise the right, (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

*PLN II*, 272 F. Supp. 2d at 1155 (citing *PLN I*, 238 F.3d at 1149 and *Turner*, 482 U.S. at 89). "The first factor of these factors constitutes *sine qua non.*" *Walker*, 917 F.2d at 385. Therefore, if a regulation is not rationally related to a legitimate and neutral governmental objective, a court need not reach the remaining three factors. *Id.* As in the previous cases challenging restrictions on bulk mail, the district court in this case found that because the ban on non-subscription bulk mail was not rationally related to a neutral government objective, it did not reach the remaining factors of the test. *PLN II,* 272 F. Supp. 2d at 1159 (holding that the court need not consider the other factors because the DOC had failed to demonstrate the regulation was rationally related to a neutral government objective); *see also PLN I*, 238 F.3d at 1151 (same); *Morrison*, 261 F.3d at 904 (same).

The DOC offered four penological goals which it claims justifies the ban on non-subscription bulk mail and catalogs: (1) reducing the volume of mail to be searched in order to increase the likelihood of mailroom staff preventing contraband from entering the facility; (2) reducing the amount of mail coming into the jail generally in order to reduce the amount of work required to sort the mail and deliver it to inmates; (3) reducing the amount of clutter in each inmate's cell to reduce the risk of fires; and (4) reducing the amount of clutter in each inmate's cell to make searching the cell and enforcing limitations on personal property more efficient and effective.

The DOC offered the same arguments in the previous cases challenging bans on subscription non-profit mail, *see PLN I*, 238 F.3d at 1150-51, and subscription for-profit mail, *see Morrison,* 261 F.3d at 902-03. We rejected each contention in those cases.

**[3]** Regarding the DOC's justification that the ban would reduce the volume of mail that may contain contraband, we believe that it is far more likely that contraband would be con-

tained in first class mail than in bulk mail. The district court properly found that there is no rational relation between this regulation and the penological objective of reducing the amount of mail that may contain contraband.

[4] The DOC also argues that the regulation is justified because it reduces the volume of mail generally. Our previous cases analyzing the efficient use of staff time argument also apply here. While the DOC's mailroom staff may have to spend more time analyzing the content of non-subscription bulk rate mail and catalogs, such a ban on non-subscription bulk rate mail and catalogs is not rationally related to the goal of reducing contraband. As we explained in *Morrison*, "[P]rohibiting inmates from receiving mail based on the postage rate at which the mail was sent is an arbitrary means of achieving the goal of volume control." *Morrison*, 261 F 3d at 903-04.

[5] The DOC also asserts that the restrictions help reduce the risk of fire. While a greater volume of mail will enter inmates' cells as a result of our decision to void this regulation, it is irrational to prohibit prisoners from receiving bulk rate mail and catalogs on the theory that it reduces fire hazards because the DOC already regulates the quantity of possessions that prisoners may have in their cells. *See Morrison*, 261 F.3d at 902 (holding that "[a]lthough the number of subscription *for-profit* publications that enter the OSP may be greater than the number of subscription *non-profit* publications, because the OSP already regulates the quantity of possessions that prisoners may have in their cell, it is similarly 'irrational' to prohibit prisoners from receiving subscription for-profit mail on the theory that it reduces fire hazards").

[6] Finally, we reject the DOC's proposition that this regulation is justified because it increases the efficiency of cell searches, for the same reason that we reject the fire hazard argument. *See Morrison*, 261 F.3d at 902 ("In light of the regulation limiting the total amount of property in a cell . . . per-

mitting inmates to receive for-profit, subscription publications could not possibly increase the total volume of cell materials."); *PLN I*, 238 F.3d at 1151 (determining that a ban on non-profit subscription publications "is not rationally related to the Department's interest in rendering efficient cell searches").

It should be noted that PLN was not sending mail to Washington's correctional facilities to be distributed to all inmates, regardless of whether they had expressed interest in receiving it. This case is therefore distinguishable from *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119 (1977), in which the Supreme Court upheld a ban on junk mail sent indiscriminately to all inmates. In *Jones*, the inmates were permitted to receive mail that was sent to them individually. *Id.* at 131 n.8. In this case, every piece of mail sent by PLN is sent as a result of a request by the recipient, but the inmates were not allowed to receive it.

[7] The only way to distinguish this case from *Morrison* and *PLN I* is that the inmates in this case did not pay for the mail that was sent to them. But it is the fact that a request was made by the recipient, and not the fact that the recipient is paying to receive the publication, that is important. As a Washington district court explained in one of the previous cases brought by PLN against the DOC, "[t]he sender's interest in communicating the ideas in the publication corresponds to the recipient's interest in reading what the sender has to say . . . We can perceive no principled basis for distinguishing publications specifically ordered by a prison inmate from letters written to that inmate for purposes of first amendment protection . . ." *Miniken v. Walter*, 978 F. Supp. 1356, 1362 (E.D. Wash. 1997) (quoting *Brooks v. Seiter*, 779 F.2d 1177, 1180) (6th Cir. 1985)). Although the *Miniken* case involved a subscription publication, it indicates that it is the request on the part of the receiver and compliance on the part of the sender, and not the payment of money, that is relevant to the First Amendment analysis.

This case is not a scenario in which a publisher has attempted to flood a facility with publications sent to all inmates, regardless of whether they requested the publication. In fact, PLN submitted evidence that at one of the correctional facilities, the mailroom received an average of only thirty-one catalogs and non-subscription bulk rate mail per day. PLN argues persuasively that this amount is virtually indistinguishable from the fifteen to thirty pieces of mail that were prohibited by the ban at issue in *PLN I,* an amount which we held was "minimal." *PLN I,* 238 F.3d at 1151.

**[8]** In addition to its First Amendment claim, PLN argues that the DOC's practice of failing to provide notice and review of rejections of non-subscription bulk mail and catalogs that are not delivered under the ban violates the Due Process clause as explained in *Procunier v. Martinez,* 416 U.S. 396 (1974). In *Procunier*, the Court held that prison officials must provide minimum procedural safeguards to protect inmates' interest in receiving mail by notifying inmates of their decision not to deliver letters. *Id.* at 417-19. In *PLN I,* we held that as a consequence of our decision that inmates have a First Amendment right to receive subscription non-profit bulk mail, "it follows that such mail must be afforded the same procedural protections as first class and periodicals mail." *PLN I,* 238 F.3d at 1152-53. The district court in this case correctly determined that because it was recognizing inmates' First Amendment rights to receive non-subscription bulk mail and catalogs, the same procedural protections must be afforded to inmates with regard to this mail as with first class, periodical, or subscription bulk rate mail. *PLN II,* 272 F. Supp. 2d at 1159.

**B**

**[9]** PLN challenges the district court's decision that the prison officials involved in banning non-subscription bulk mail and catalogs were entitled to qualified immunity. In *Bahrampour v. Lampert*, 356 F.3d at 976, we recently set

forth the test to be applied in determining whether state actors are entitled to qualified immunity. "The first step is to determine whether the alleged actions are unconstitutional as a matter of law. If so, the next step is to analyze whether the defendants are entitled to qualified immunity because the rights asserted were not clearly established at the time." *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Having determined that the ban on non-subscription bulk mail and catalogs is unconstitutional, we must now decide whether the officials' actions "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fizgerald,* 457 U.S. 800, 818 (1982) (citations omitted). In determining whether PLN's rights in this case were clearly established, and whether a reasonable person would have known his or her actions violated these rights, we may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent. *PLN I,* 238 F.3d at 1152; *Sorrels v. McKee,* 290 F.3d 965, 970 (9th Cir. 2002).

PLN argues that after *Morrison, PLN I,* and *Bahrampour*, a reasonable official could not conclude that this ban on bulk mail and catalogs was constitutional. PLN points to language from *Bahrampour*, in which the Court explained its holding in *PLN I* by saying, "[W]e held that prohibiting inmates' receipt of *non-profit* bulk mail was unconstitutional." *Bahrampour,* 356 F.3d at 977 (emphasis in original). PLN also points out that the district court cases within the Ninth Circuit that the officials rely on to show that the law was not clearly established predate *PLN I* and *Morrison.* PLN argues that the officials' reliance upon these cases was unreasonable. It further argues that because the law of other circuits conflicts with the law of this circuit, it was not reasonable for the officials to look to other circuits in light of binding precedent.

**[10]** The prison officials argue that a ban in this case is sufficiently different from the bans that the Court struck down in *PLN I* and *Morrison,* that the law was not clearly established,

and that the officials did not act unreasonably. One paragraph from the Court's decision in *Morrison* is sufficient to demonstrate how the officials could have reasonably thought that the ban in this case was constitutional:

> Moreover, prisons can and have adopted policies permitting prisoners to receive for-profit, commercial publications, while at the same time, prohibiting prisoners from receiving unsolicited junk mail. For example, the California Department of Corrections ("CDC") adopted a regulation that prohibits prisoners from "possessing . . . catalogues, advertisements, brochures, and materials whose primary purpose is to sell a product(s) or service(s) and when taken as a whole, lacks serious literary, artistic, political, educational, or scientific value." 15 Cal. Admin. Code § 30006(c)(11). Unlike the [the regulation at issue in *Morrison*], the CDC regulation is specifically tailored to permit inmates to receive for-profit, subscription publications such as *The New York Times*, while at the same time prohibiting the receipt of unsolicited junk mail.

261 F.3d at 905. The officials in this case could have read this paragraph from *Morrison* and reasonably (though incorrectly, as it turns out) believed that like the CDC, they could ban catalogs and non-subscription bulk mail, while allowing inmates to receive non-profit and for-profit subscription bulk mail.

PLN also argues that the grant of summary judgment was improper in light of the fact that PLN submitted evidence to suggest that prison officials acted with "a specific intent to interdict the information it offered prisoners about their legal rights." The prison officials correctly point out, however, that "a defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). We may properly decide whether the prison

officials are entitled to qualified immunity without considering PLN's evidence that they acted with impure motives.

## C

We must consider whether the district court erred in refusing to grant qualified immunity to the prison officials regarding PLN's claim that the DOC's policy for handling third-party legal materials violates PLN's constitutional rights. There is considerable dispute about the facts surrounding the third-party legal materials claim. The district court declined to grant summary judgment on this claim to either party precisely because of the differing pertinent factual questions that need to be resolved at trial. In evaluating whether the district court improperly failed to grant qualified immunity to the officials regarding this claim, we must assume that the version of events offered by the nonmoving party is correct. *Wilkins v. City of Oakland,* 350 F.3d 949, 951 (9th Cir. 2003).

**[11]** The DOC's policy regarding third-party legal material, contained in DOC 450.100, prohibits the delivery of "mail containing information which, if communicated, could create a risk of violence and/or physical harm to any person." DOC 590.500 permits the delivery of mail which

> a. consists of judicial opinions (published and unpublished), reports and recommendations, orders, complaints or answers, settlement agreements, class action notices, legal briefs and memoranda, and motions, and

> b. otherwise complies with DOC Policy 450.100 Mail for Offenders and has been stamped "approved third-party legal materials" by correctional staff.

The district court correctly held that the DOC regulation prohibiting mail that could create a risk of violence and physical harm to any person is constitutional on its face. *PLN II,* 272

F. Supp. 2d at 1162. The question presented in this case is whether the prison officials applied this rule in a fashion that is unconstitutional. Because we must, for purposes of this appeal, accept the facts as laid out by PLN, we cannot determine on this record whether the prison officials are entitled to qualified immunity. PLN contends that the DOC's policy was applied by the prison officials in a manner that singled out PLN for discriminatory treatment, while allowing other publishers to deliver similar material. PLN challenges the DOC's refusal to deliver more than one hundred specific legal documents.

**[12]** PLN suggests that the real motive of the prison officials who prevented third-party legal materials from being delivered was to suppress materials that embarrass the DOC and educate inmates on how to file their claims. Although an improper motive ordinarily will not defeat a request for qualified immunity, *see Crawford-El*, 523 U.S. at 588, if the policy were applied in a discriminatory fashion based on the content of the material, this would clearly violate PLN's First Amendment rights. *See Turner v. Safley,* 482 U.S. at 90 (restrictions on free speech must operate without regard to the content of the restricted material). Accordingly, we hold that the prison officials are not entitled to qualified immunity regarding PLN's claim that they violated its constitutional rights in banning the receipt of the third-party legal materials.

## Conclusion

The district court properly granted summary judgment to PLN regarding the ban on non-subscription bulk mail and catalogs, because the ban is not rationally related to a legitimate penological objective. It also properly granted qualified immunity to the prison officials on this claim because their actions did not violate clearly established law. We further conclude that the district court must be affirmed on its decision to deny the prison officials' motion for summary judgment based on qualified immunity regarding PLN's third-

party legal materials claim, because we must accept as true its allegations that the prison officials applied the policy in a way that discriminated against PLN on the basis of the content of the legal materials.

**AFFIRMED.**