v.

**METROPOLITAN INTERPRETERS AND TRANSLATORS, INC., J. C., L. L., R. P., M. L., B. A., United States of America, Eileen Zeidler, Sondra Hester, Darek Kitlinski, William R. Sherman, Defendants.**

Case Nos. 12cv0460 JM(MDD), 13cv1891 JM(MDD), 13cv1892 JM(MDD).

United States District Court, S.D. California.

Signed Oct. 24, 2014.

Eugene G. Iredale, Grace S. Jun, Julia Yoo, Iredale & Yoo, APC, San Diego, CA, for Plaintiffs.

Erin Cranman Witkow, Yoanna S. Binder, Maura F. Kingseed, Manatt, Phelps and Phillips, LLP, Los Angeles, CA, for Defendants Metropolitan Interpreters and Translators, Inc., M. L., B. A. and R. P.

Ernest Cordero, Jr., U.S. Attorney's Office, San Diego, CA, for Defendants Eileen Zeidler, Sondra Hester, Darek Kitlinski and William R. Sherman.

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

JEFFREY T. MILLER, District Judge.

Defendants Metropolitan Interpreters and Translators, Inc. ("Metropolitan") and J. C., R. P., M. L., B. A. and C. G. (the "Individual Defendants") move for partial summary judgment on the claims arising under the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. § 2002(1), (2), and (3), and the punitive damages claim. Plaintiffs M. G., F. M., L. A., J. M., L. G., F. B., M. N., R. G., L. S., E. R., M. D., M. T., E. S., and L. P. oppose the motion and separately move for summary judgment on the issue of whether Metropolitan and the Individual Defendants violated various provisions of EPPA. Pursuant to Local Rule 7.1(d)(1), the court finds this matter appropriate for decision without oral argument. For the reasons set forth below, the court grants summary judgment in favor of defendants R. P., M. L., B. A. and C. G. on the EPPA and punitive damages claim and denies Plaintiffs' motion for summary judgment on these claims; grants summary judgment in favor of Plaintiffs on the EPPA claims asserted against Metropolitan and J. C. and denies Metropolitan and J. C.'s motion for summary judgment on these claims; and denies Metropolitan and J. C.'s motion for summary judgment on the punitive damages claim.

## BACKGROUND

*The Allegations*[1]

The Second Amended Complaint ("SAC"), filed on October 30, 2012 in 12cv0460 JM(MDD), alleges nine causes of action against Defendants: (1) violation of EPPA, 29 U.S.C. § 2002(1); (2) violation of EPPA, 29 U.S.C. § 2002(2); (3) violation of EPPA, 29 U.S.C. § 2002(3); (4) civil conspiracy; (5) fraud; (6) negligent misrepresentation; (7) intentional infliction of emotional distress; (8) negligence; and (9) permanent injunction. Plaintiffs are linguists employed by defendant Metropolitan, a nationwide corporation that describes itself as "the largest provider of translators, transcription and interpretation services to the law enforcement community, government agencies, and private corporations nationwide." (SAC at p. 1:4–5; ¶ 6, 18). In addition to Metropolitan, Plaintiffs name five of Metropolitan's employees as defendants, J. C., L. L., R. P., M. L., B. A. (Compl. ¶¶ 7–11).[2]

Plaintiffs provide the following summary of their claims:

Plaintiffs worked as linguists for Metropolitan Interpreters and Translators, Inc. ("Metropolitan"), a private corporation that contracted with various governmental agencies nationwide. Metropolitan had a contract with the Drug Enforcement Administration and Immigration and Customs Enforcement in San Diego. Plaintiffs, as employees of Metropolitan, provided translation services for DEA and ICE in San Diego County. In 2011, Metropolitan and DEA requested, required and demanded that all linguists working in their San Diego and Imperial County offices take polygraph exams. Defendant B.

A., the Metropolitan site supervisor in San Diego, made all arrangements for Plaintiffs to take the DEA administered polygraph exams as a condition of employment. If the employees "failed" or refused the test, or had inconclusive results, they would lose their "clearance" to be in the DEA offices, meaning that they would be terminated from their jobs.

Metropolitan was not conducting an investigation involving economic loss to Metropolitan. Nor did Metropolitan have any individualized suspicion that any of the Plaintiffs had committed a crime or engaged in wrongdoing. Rather, Defendants imposed the blanket requirement that every linguist in San Diego and Imperial Counties take polygraphs. Defendants provided no written material to Plaintiffs which explained the purpose of these mandatory tests nor the basis for any investigation or suspicion; nor did Defendants give written notice of the employees' rights under federal and state law.

One of the polygraphers, Defendant Eileen Zeidler, asked grossly inappropriate and personal questions to some of the Plaintiffs. These questions were demeaning and humiliating. DEA agents pressured Plaintiffs into "telling the truth" or accused Plaintiffs of lying. Agents escorted Plaintiffs out of the building in a humiliating fashion after they "failed" the polygraph.

The polygraph testing in this case was prohibited by the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001 et seq. ("EPPA"). Defendants effectively terminated Plaintiffs from their em-

---

**1.** Unless otherwise noted, references to the Court Docket are those in Case No. 12cv0460.

**2.** On February 25, 2013, Plaintiffs voluntarily dismissed L. L. as a party, thereby mooting L. L.'s motion to dismiss for lack of personal

jurisdiction. (Ct. Dkt. 55). Plaintiffs have also dismissed with prejudice the intentional infliction of emotional distress cause of action from all three complaints.

ployment either for "failing" the polygraph test, having an inconclusive test result, or refusing to submit to the examination. (SAC at pp. 1:4–2:2). The court notes that the other two cases (13cv1891 and 13cv1892) contain substantially similar allegations, especially with respect to the EPPA claims.

*Procedural Posture*

All three cases assert nearly identical allegations. The three plaintiffs in Case No. 13cv1892, M. T., E. S., and L. P., worked at the DEA's El Centro facility. The ten plaintiffs in 12cv0460, M. G., F. M., L. A., J. M., L. G., F. B., M. N., R. G., L. S., and E. R., and the single plaintiff in 12cv1891, M. D., worked at either the main DEA Field Division in Kearney Mesa or the DEA's Carlsbad office.

On July 18, 2012, the original presiding judge, Judge Dana Sabraw, granted in part and denied in part the motions to dismiss filed by Defendants Metropolitan and the Individual Defendants. Following the filing of two amended complaints and the addition of the United States and certain federal employees as parties, Judge Sabraw recused himself and the case was reassigned to the undersigned. On January 28, 2013, the court ordered the substitution of the United States for the federal employee defendants pursuant to 28 U.S.C. § 2679(b)(1) and (d)(2).

On March 20, 2013, this court found that the United States was not entitled to assert the statutory exemptions to liability of the EPPA. Since then, five plaintiffs (L. A., L. G., J. M., M. G. and L. S.) have resolved their claims with Metropolitan and Plaintiffs in all cases have settled with defendant United States.[3] Metropolitan

then filed an Objection to the settlement between the United States and Plaintiffs. The court referred the matter to United States Magistrate Judge Mitchell Dembin for a Report and Recommendation ("R & R"). On July 11, 2014, Magistrate Judge Dembin issued a "Report and Recommendation on Joint Motion to Dismiss United States and on Defendant Metropolitan's Motion for Determination of Good Faith Settlement." (Ct. Dkt. 159). The R & R recommended overruling Metropolitan's Objections.

On October 15, 2014, this court adopted the R & R in its entirety and (1) Overruled Metropolitan's Objection to the Joint Motion to Dismiss; (2) Granted the Joint Motion to Dismiss the United States as a party to this action; and (3) Denied Defendant Metropolitan's Motion for a Determination of Good Faith Settlement.

*The Undisputed Evidentiary Record*

In 2010, the DEA received information from another law enforcement agency, U.S. Immigration and Customs Enforcement ("ICE"), that the DEA had an employee leak in its San Diego wireroom, and that a linguist may have been involved in criminal activity. After receiving this information, Group Supervisor Darek Kitlinski, and other supervisors at the DEA, decided to administer polygraph examination to all Metropolitan employees working at the DEA's three Southern District of California locations in an attempt to discover the source of the leak.

On or about January 4, 2011, the DEA commenced polygraph examination of Metropolitan's employees. Metropolitan and the Individual Defendants were not involved in the DEA's decision to administer the polygraph examinations or how the

---

**3.** To settle all claims, the United States agreed to pay a total of $500,000 to all Plaintiffs and to take certain steps to reassess the polygraph

examination results and to expunge the results from the employee's record.

examinations would be administered. The format, test questions, grading, results, and the nature of the polygraph examinations were determined by the DEA. No Metropolitan employee was present during the examinations.

Metropolitan, through its employees, facilitated the implementation of the DEA's polygraph examination plan. Metropolitan, who employed about 100 linguists in 2011, notified Plaintiffs of the required polygraph examinations in writing, scheduled the polygraph examinations, and advised the employees of the adverse consequences of not taking the polygraph examinations. Plaintiffs received letters and memos from Metropolitan purporting to explain that the polygraph examinations were legal and that monitors/linguists were required to submit for examination. Once an employee refused to take the polygraph examination or failed the test, the employee was not permitted to continue to work on DEA projects and was terminated. Metropolitan also disclosed the DEA polygraph examination results of its linguists to ICE officials. ICE then terminated access to ICE projects for those employees who failed or refused to take the polygraph examination.

As the involvement of Metropolitan's employees in the polygraph examination is at issue on the summary judgment motions, the following briefly describes the overall role of each Individual Defendant:

### Defendant J. C.

Defendant J. C., Metropolitan's vice-president, was in charge of the day-to-day operations for Metropolitan. J. C. played a key role in facilitating the polygraph examinations of Metropolitan's employees. J. C. also executed the purchase agreement between Metropolitan and the DEA and oversees the company's business. J. C. received and maintained numerous communications concerning the polygraph examinations. Among those communications is a letter dated July 13, 2011, authored by one of Metropolitan's shift supervisors, requesting information concerning the legality of the polygraph examinations and informing J. C. of the employees' animosity regarding the polygraph examinations. Without seeking legal advice, J. C. prepared a response to the letter stating, among other things, that EPPA does not apply to Metropolitan because the DEA, and not Metropolitan, is requiring the polygraph examination. (Exh. 20, Metro 1114). J. C. caused to be distributed to Plaintiffs several communications indicating that an employee who either refused to take or failed the polygraph examination would lose their clearance to work at DEA facilities and their employment with Metropolitan would be terminated. (Exh. 20, Metro. 11106–07).

### Defendant R. P.

Defendant R. P. was the West Coast Operations Manager for Metropolitan. He participated in discussions concerning the polygraph exams, suggested providing Metropolitan's employees with an article on polygraph examinations and a question and answer sheet, tracked the polygraph examination results, and processed the final paperwork after termination of Plaintiffs.

### Defendant M. L.

In 2011, Defendant M. L. was the Senior Site Supervisor at Metropolitan, overseeing the linguists at the San Diego, El Centro, and Los Angeles Field Divisions. J. C. was M. L.'s supervisor.

### Defendants B. A. and C. G.

Defendant B. A. was the Metropolitan site supervisor at the DEA Field Division in San Diego and C. G. the site supervisor for the El Centro DEA office. B. A. scheduled the polygraph examinations for

the monitors located in the San Diego office. B. A. also suggested that the monitors review a video to know what to expect when taking a polygraph examination, and spoke with them regarding the process.

Defendant C. G. also communicated with the monitors regarding the polygraph examinations. C. G. also provided R. P. with a list of those monitors who had passed and failed the polygraph examination.

## DISCUSSION

### Legal Standards

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir.2005). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). The opposing party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (citation omitted). The opposing party also may not rely solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

The court must examine the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, when " 'the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial.' " *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (emphasis in original) (quoting *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992)).

### The Summary Judgment Motions

Based upon the evidentiary record, Plaintiffs seek findings that (1) Metropolitan violated 29 U.S.C. § 2002(1), (2) and (3) as to all nine Plaintiffs; (2) J. C. violated 29 U.S.C. § 2002(1), (2) and (3) as to all nine Plaintiffs; (3) M. L. violated 29 U.S.C. § 2002(1), (2) and (3) as to all five plaintiffs in Case No. 12cv0460; (4) B. A. violated 29 U.S.C. § 2002(1), (2) and (3) as to Plaintiffs M. D., F. B., R. G., M. N., E. R. and F. M.; and (5) C. G. violated 29 U.S.C. § 2002(1), (2) and (3) as to all plaintiffs (E. S., L. P., and M. T.) in Case No. 13cv1892.

The Individual Defendants move for summary judgment on the EPPA claims and also move for summary judgment on the claim for punitive damages.

### EPPA

It is unlawful under 29 U.S.C. § 2002 "for any employer engaged in or affecting commerce or in the production of goods for commerce—

(1) directly or indirectly, to require, request, suggest, or cause any employee

or prospective employee to take or submit to any lie detector test;

(2) to use, accept, refer to, or inquire concerning the results of any lie detector test of any employee or prospective employee;

(3) to discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against—

(A) any employee or prospective employee who refuses, declines, or fails to take or submit to any lie detector test, or

(B) any employee or prospective employee on the basis of the results of any lie detector test;"

EPPA provides a private right of action by creating a cause of action for an employee against "an employer who violates [the EPPA] ... for such legal or equitable relief as may be appropriate." 29 U.S.C. § 2005(c)(1). Under the statutory scheme, Plaintiffs may recover damages from their employer for the unlawful polygraph examinations. 29 U.S.C. § 2005(c). An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001(2). Pursuant to the Secretary of Labor's duty to "issue such rules and regulations as may be necessary or appropriate to carry out [the EPPA]," 29 U.S.C. § 2004(a), the Secretary promulgated the following regulation:

The term employer means any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee. A polygraph examiner either employed for or whose services are otherwise retained for the sole purpose of administering polygraph tests ordinarily would not be deemed an employer with respect to the examinees.

29 C.F.R. § 801.2(c) (2001); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 726 (5th Cir.2002) ("the EPPA makes it illegal for an employer ... to request that an employee take a polygraph examination").

*Defendant Metropolitan*

■ The court grants summary judgment in favor of Plaintiffs and · against Metropolitan on whether Metropolitan violated 29 U.S.C. § 2002(1), (2) and (3). Plaintiffs come forward with overwhelming evidence to show (1) Metropolitan is the Plaintiffs' employer and (2) Metropolitan required Plaintiffs to submit to or take a polygraph examination, it inquired into the results of the polygraph examinations, and Metropolitan discharged employees who failed or refused to take the polygraph examination. *See i.e.* Exh. 24, Metro 2101–02. Such conduct violates 29 U.S.C. § 2002(1), (2) and (3). Moreover, Metropolitan does not submit any evidence to rebut or challenge the evidence submitted by Plaintiffs that it, in fact, was Plaintiffs' employer or that it required, inquired into, or discharged Plaintiffs who failed or refused to submit to polygraph examination.

In sum, the court grants summary judgment in favor of Plaintiffs and against Defendant Metropolitan on the claims that Metropolitan violated 29 U.S.C. § 2002(1), (2) and (3).

*Defendants R. P., M. L., B. A., and C. G.*

■ The court grants summary judgment in favor of Defendants R. P., M. L., B. A., and C. G. (collectively "Co-employees") and against Plaintiffs on whether these Defendants violated 29 U.S.C. § 2002(1), (2) or (3). In order to prevail on their EPPA claims against Plaintiffs' Co-employees, the defendants must be deemed qualified "employers" for purposes

of EPPA. As a matter of law, co-employees, even if supervisors, are not deemed qualified "employers" for purposes of EPPA.

Only an "employer" is liable under EPPA. 29 U.S.C. § 2005(c)(1). An employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee or prospective employee." 29 U.S.C. § 2001(2). As the Secretary of Labor has made clear, not every individual who acts directly or indirectly in the interests of an employer is to be considered an "employer." For example, one regulation, 29 C.F.R. § 801.2(c), identifies that a polygrapher, acting on behalf of an employer, "ordinarily would not be deemed an employer with respect to the examinees."

The court concludes that applying the plain meaning of the term "employer" would not ordinarily include employees of that organization. In virtually every conceivable case where a company requires an employee to submit to polygraph examination, co-employees would, to some degree, act in the direct or indirect interests of the employer by, for example, typing letters, forwarding telephone calls or correspondence, scheduling the polygraph examinations, etc. Plaintiffs' interpretation of 29 U.S.C. § 2001(2) is simply too broad. Under Plaintiffs' view any employee who had some involvement, however tangential, would be considered an "employer" for purposes of EPPA as that employee's conduct benefits the employer and demonstrates some control over his or her employment duties and responsibilities. Such an expansive view appears to run counter to the Secretary of Labor's own interpretation of the term "employer." One can hardly conceive of an individual more involved and working for the benefit of the employer (and in direct control of the polygraph examination) than the polygrapher.

However, a polygrapher, working to directly benefit the employer, is not considered an "employer." *See* 29 C.F.R. § 801.2(c).

As noted by the parties, some courts have analyzed the term "employer" under the EPPA and compared it to the definition of "employer" in the Fair Labor Standards Act of 1938 ("FLSA"). *Calbillo,* 288 F.3d at 726. "[S]ince the meaning of 'employer' under the FLSA includes those who, as a matter of economic reality, exercise some degree of control over an employee's terms and conditions of employment, an 'economic reality' test [is] appropriate for the EPPA as well." *Id.* at 727 (quoting *Rubin v. Tourneau, Inc.,* 797 F.Supp. 247, 251–52 (S.D.N.Y.1992)). Under this test, one is considered an "employer" where, "as a matter of economic reality, the [individual] exerts some degree of control over the employer's compliance with the EPPA." *Id.*

In *Boucher v. Shaw,* 572 F.3d 1087 (9th Cir.2009), a FLSA case, the Ninth Circuit noted that one looks to the totality of the employment relationship in making the "employer" determination with the touchstone being the "economic reality" of the relationship. *Id.* at 1091. "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." *Id.* (quoting *Lambert v. Ackerley,* 180 F.3d 997, 1012 (9th Cir. 1999)).

Here, Co-employees and supervisors R. P., M. L., B. A., and C. G. were involved in the polygraph examinations by communicating with co-employees concerning the polygraph examinations, scheduling the polygraph examinations, discussing the results with management, providing information about the polygraph examinations and

communicating to Plaintiffs that Metropolitan was terminating their employment. Such conduct occurred during the course and scope of their employment relationship with Metropolitan. Moreover, there is no evidence to show that these Co-employees were in any way responsible for the decision to require Metropolitan's employees to subject themselves to polygraph examination, possessed the unilateral power to discharge any employee, set the pay scale for Plaintiffs, or maintained the employment records of Plaintiffs. Under the totality of circumstances there is insufficient evidence to raise a genuine issue of material fact that the Co-employees are deemed "employers" for purposes of EPPA.

In sum, the court grants summary judgment in favor of Co-employees and against Plaintiffs on the EPPA claims.

*Defendant J. C.*

■ Although a close issue, the court grants Plaintiff's motion for summary judgment on whether J. C. violated EPPA, and denies J. C.'s motion for summary judgment on this issue. Here, the evidentiary record demonstrates that J. C. exercised substantial "control over the nature and structure of the employment relationship." *Boucher*, 572 F.3d at 1091. At the outset, the court notes that J. C. is in a fundamentally different position than that of the Co-employees. Not only is J. C. an officer of Metropolitan (vice-president) but he was instrumental in exercising operational control over the polygraph examinations, including the hiring and firing of Metropolitan's employees. J. C. instructed all of Metropolitan's monitors to submit to polygraph examination or lose their jobs. (Exh. 20, Metro 1137). J. C. addressed the employees' concerns regarding the polygraph examination, (wrongly) represented that EPPA does not apply to Metropolitan because the DEA was requesting the polygraph examinations, iden-

tified that the DEA had security concerns, and informed the employees that their failure to take the polygraph examination would result in the withdrawal of their security clearances with the DEA and their inability work on the projects and, as a consequence, the termination of their employment with Metropolitan. This undisputed factual record demonstrates that J. C. is an employer for purposes of 29 U.S.C. § 2002 and that he directly or indirectly required Plaintiffs to submit to polygraph examination.

J. C. submits no evidence to rebut the substantial evidence identified by Plaintiffs, including J. C.'s own deposition testimony. Rather, J. C. broadly contends that the DEA required and administered polygraph examinations, he did not personally schedule any of the polygraph examinations, and he was not involved in the DEA's decision to revoke an employee's security clearance. For purposes of EPPA, these arguments are largely irrelevant. EPPA provides a private right of action against any "employer" who "directly or indirectly, [ ] require(s), request(s), suggest(s), or cause(s) any employee or prospective employee to take or submit to any lie detector test." 29 U.S.C. § 2002. The fact that the DEA was the driving force behind the polygraph examinations does not immunize J. C. from his own conduct. As the elements for the imposition of liability under EPPA are satisfied (and Defendants submit no countervailing relevant evidence), the court grants Plaintiffs' motion for summary judgment on the EPPA claims against J. C. and denies J. C.'s motion for summary judgment.

In sum, the court grants summary judgment in favor of Plaintiffs and against J. C. on the EPPA claims.

*The Punitive Damages Claim*

■ Metropolitan and the Individual Defendants move for summary judgment

on whether punitive damages are available under EPPA. The court grants the motion with respect to the Co-employees (they are not employers for purposes of EPPA) but denies the motion with respect to J. C. and Metropolitan, finding that an award of punitive damages is a question of fact for the jury to decide.

■ The damages provisions of EPPA, 29 U.S.C. §§ 2002(1), 2005(c) provide that an employer is liable for appropriate legal or equitable relief, including, but not limited to, payment of lost wages, benefits and costs, including attorney's fees for the prevailing party. These provisions do not exclude the availability of punitive damages. "The general rule ... is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 70–71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). As noted in *Deetjan v. V.I.P., Inc.*, 287 F.Supp.2d 80, 81 (D.Me.2003), no Circuit Court appears to have ruled on the availability of punitive damages under EPPA. However, District Courts that have considered the availability of punitive damages under EPPA limit such an award to instances of malicious or reckless violation of law by analogy to 42 U.S.C. § 1981a(b)(1) ("[a] complaining party may recover punitive damages ... if ... the respondent engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual"). *Deetjan*, 287 F.Supp.2d at 81; *Laney v. Getty*, 19 F.Supp.3d 737 (E.D.Ky.2014); *Bass v. Wendy's of Downtown, Inc.*, 2012 WL 1552264 (N.D.Ohio, May 1, 2012); *Lyles v. Flagship Resort Devel. Corp.*, 371 F.Supp.2d 597 (D.N.J.2005).

Here, the court notes that there appears to be insufficient evidence to show that either J. C. or Metropolitan acted with malice. However, whether these Defendants acted with reckless indifference to the EPPA rights of Plaintiffs, presents a genuine issue of material fact.

In sum, the court grants summary judgment in favor of defendants R. P., M. L., B. A. and C. G. on the EPPA and punitive damages claims and denies Plaintiffs' motion for summary judgment on these claims; grants summary judgment in favor of Plaintiffs on the EPPA claims asserted against Metropolitan and J. C. and denies Metropolitan and J. C.'s motion for summary judgment on these claims; and denies Metropolitan and J. C.'s motion for summary judgment on the punitive damages claim. For good cause shown, the court also grants the motions to file documents under seal (Ct. Dkts. 118, 124, 143, and 148) and the *ex parte* motion to file video exhibit (Ct. Dkt. 154).

**IT IS SO ORDERED.**