OPINION
BETTY B. FLETCHER, Circuit Judge:
Defendants-Appellants Tim Scarrott and Andrew Koponen, Police Officers for the City of Oakland (“Scarrott and Kopo-nen,” or “the officers”), raise several issues on appeal. We conclude that we have jurisdiction to consider only the district court’s denial of their motion for summary judgment on the ground of qualified immunity. We affirm.
JURISDICTION
This court has jurisdiction under 28 U.S.C. § 1291 over an interlocutory appeal where the ground for the motion in question is qualified immunity. Jeffers v. Gomez, 267 F.3d 895, 903 (9th Cir.2001) (per curiam); Schwenk v. Hartford, 204 F.3d 1187, 1195 (9th Cir.2000). In such circumstances, however, appellate review is generally limited to issues of law, see Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and “does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact.” Jeffers, 267 F.3d at 903; see Behrens v. Pelletier, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996).
The first question to be resolved, therefore, is whether this court has jurisdiction over all the issues raised on appeal. In Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that a district court’s rejection of a claim of qualified immunity, “to the extent that it turns on an issue of law,” is a final decision subject to immediate appeal under 28 U.S.C. § 1291. Nevertheless, we are not precluded from hearing this interlocutory appeal merely because there are issues of fact in dispute. See Jeffers, 267 F.3d at 903; Schwenk, 204 F.3d at 1195; Knox v. Southwest Airlines, 124 F.3d 1103, 1107 (9th Cir.1997). Where disputed facts exist, we will determine if the denial of qualified immunity was proper by assuming that the version of events offered by the non-moving party is correct.
It is well-established that “an appellate court lacks jurisdiction over an interlocutory appeal challenging the sufficiency of the evidence supporting the trial court’s conclusion that an issue of fact exists.” Jeffers, 267. F.3d at 903, citing *900 Johnson, 515 U.S. at 313, 115 S.Ct. 2151. The opinion in Jeffers explained that “any issue of law, including the materiality of the disputed issues of fact, is a permissible subject for appellate review.” 267 F.3d at 905 (emphasis added). Thus this court has jurisdiction to consider whether, even accepting the Wilkinses’[1] version of the events on January 11, 2001, the alleged conduct of the officers violated a clearly established legal standard. See Knox, 124 F.3d at 1107(distinguishing Johnson, where the defendant simply denied having committed the alleged acts, from the situation where the motion presents only the legal question of whether the alleged conduct violated a clearly established right).
The officers raise three issues in their appeal of the denial of qualified immunity, arguing that: (1) they did not violate the decedent Wilkins’ Fourth Amendment right; (2) the trial court did not identify facts which would support such a finding; and (3) even if there were a triable issue of fact on the alleged Fourth Amendment violation, the officers are entitled to qualified immunity. We have no jurisdiction over the first two issues in this interlocutory appeal, because they focus on the merits of the Wilkinses’ claim, not the materiality of disputed facts, nor the legal issues relevant to qualified immunity. On an interlocutory appeal of a denial of qualified immunity, this court does not have jurisdiction to rule on the merits of the Wilkinses’ Fourth Amendment claim, nor may it conduct an inquiry into the sufficiency of evidence to support a finding that the officers did in fact violate Wilkins’ constitutional right. Contrary to the arguments of the officers in their brief, the key issue in this case is not whether the “undisputed facts establish that the actions of the officers were objectively reasonable and not a violation of Wilkins’ constitutional right.” As we explain below, in this case it is the disputed facts that are crucial for both the qualified immunity analysis and the eventual disposition of the Wilkinses’ claim on the merits. The issue for decision is thus whether the officers are eligible for qualified immunity under the Wilkinses’ version of the disputed facts.
Resolving all factual disputes in the Wil-kinses’ favor, therefore, we may consider only whether Scarrott and Koponen are entitled to qualified immunity from the Wilkinses’ § 1983 claim.
FACTUAL AND PROCEDURAL BACKGROUND
The parties recount different versions of the events that took place on the night of January 11, 2001. Although some of the relevant facts are undisputed, others that are important to the merits of the Wilkins-es’ claim remain contested. In reviewing the district court’s denial of summary judgment on the ground of qualified immunity, this court must “assume that the version of the facts asserted by the non-moving party is correct in determining whether the denial of qualified immunity was appropriate.” Bingham v. City of Manhattan Beach, 341 F.3d 939, 942 (9th Cir.2003); see also Schwenk, 204 F.3d at 1193, n. 3.
The following facts are not in dispute. On January 11, 2001, Officer William Wilkins was assigned to work in plain clothes in the narcotics unit of the Oakland Police Department. At approximately 11:00 p.m., Officer Wilkins and other police officers *901 were pursuing a stolen white Jeep near 90th Avenue and B Street in Oakland. During the pursuit, the suspect, later identified as Demetrius Phillips, left the vehicle and ran away. Police officers, including Officer Wilkins, continued the chase on foot. Several transmissions regarding the theft and subsequent chase were broadcast on the main police radio channel. Appellants Searrott and Koponen heard these transmissions, and although they were already responding to another incident, they decided to assist in the search for the car theft suspect. The dispatcher directed them to 91st Avenue and B Street, where they were to help form a perimeter of police units, sealing off the area in which the suspect was believed to be located. Upon arriving at the intersection of 91st and B, Searrott (who was driving the patrol car) saw two men near the sidewalk on B Street between 90th and 91st Avenues. He drove toward the men, and stopped the car at an angle pointing directly to the location of the two men on the sidewalk. When' the car stopped, both defendants alighted to investigate. Searrott and Ko-ponen had each been on the street as a patrol officer for fewer than five months, and neither was acquainted with Officer Wilkins. These are the main undisputed facts.
Accepting the Wilkinses’ version of the disputed facts, the following picture emerges. Although conflicting descriptions of the suspect were broadcast on the main channel, at least two of them included the detail that he was wearing a red shirt. Searrott noticed that one of the two men on the sidewalk was wearing a red shirt; this man was in fact Demetrius Phillips, the suspect. The other man, Officer Wilkins, was wearing a gray sweatshirt. In a voice loud enough to be audible from the corner of 90th and B, Wilkins ordered Phillips to lie on the ground. After this order was repeated, Officer Wilkins punched and kicked Phillips, who then lay spreadeagled on the ground with his head turned to the right. Wilkins pointed his gun at Phillips, and approached him from the left side. Both Mr. Phillips’ position and the manner of Wilkins’ approach were described by other officers at the scene as consistent with police procedure for high risk arrests, and at least one of those officers — Officer Nash — immediately recognized that the scene he was viewing was a police arrest.
At this point, Koponen said “He’s got a gun.” Officer Nash, after noting that the suspect was not armed, said either “He’s a cop,” or “That’s Will,” speaking to the defendants and referring to Officer Wilkins. This statement was made from less than 30 feet away from Wilkins’ position. Officer Wilkins pulled off the hood of his sweatshirt, turned toward the defendants, and said loudly “It’s me, Willie.” He then turned back to Phillips. Koponen was less than 15 feet away. In the Appellees’ version of the incident, Koponen said only “he’s got a gun”; Searrott said nothing, and neither officer ordered Wilkins to drop the gun. The Wilkinses contend that no other warning was given.
Soon after Wilkins’ statement, Searrott and Koponen opened fire. The gunshots began seconds after the officers approached Wilkins and Phillips on the sidewalk. Both officers fired several shots in the space of a few seconds: Searrott fired six or seven times, while Koponen fired seven shots. Wilkins was hit nine times, and came to rest on the ground approximately 12 to 15 feet away from Phillips. Wilkins’ gun was found on the ground next to Phillips, an indication that he had dropped his weapon at or close to his original position when Searrott and Kopo-nen opened fire.
*902 Appellees — Officer Wilkins’ estate, Ms widow and son, and his parents — commenced this action, alleging violations of Wilkins’ constitutional rights under the Fourth Amendment and the Due Process clauses of the Fifth and Fourteenth Amendments, as well as their own substantive due process rights. The complaint requests damages under 42 U.S.C. § 1983. After discovery had begun, all the named defendants brought a motion for summary judgment, arguing inter alia that they were entitled to summary judgment on the substantive due process claims, that the officers did not violate Wilkins’ Fourth Amendment right to be free from excessive force, and that the officers were entitled to qualified immunity-
The district court granted the motion with regard to the substantive due process claims, but denied the motion in all other respects. The portion of the district court’s order denying defendants’ remaining claims held first that “triable issues of material fact existed which, if resolved in plaintiffs’ favor, would support a finding that defendants used unreasonable force and thus violated the decedent’s Fourth Amendment right to be free from unreasonable seizure;” second, it found that “such right was clearly established at the time of the incident and, viewing the disputed material facts in the light most favorable to the plaintiffs, it would have been clear to a reasonable officer that the conduct was unlawful in the situation confronted.” Scarrott and Koponen filed a timely notice of appeal.
DISCUSSION
We review de novo Scarrott and Koponen’s appeal from a demal of summary judgment based on qualified immunity. See Bingham, 341 F.3d at 945. The threshold inquiry in a qualified immunity analysis is whether the plaintiffs allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); see also Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir.2002). This general evaluation of the constitutionality of the alleged conduct, however, is not sufficient; we must also determine whether the actions alleged violate a clearly established constitutional right, where ‘clearly established’ means that “it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Saucier, 533 U.S. at 202, 121 S.Ct. 2151 (emphasis added).
Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), established that the use of force is contrary to the Fourth Amendment’s prohibition against unreasonable seizures, if that force is excessive as measured by objective standards of reasonableness. In Saucier, the Supreme Court explained that this rule is applied in the first stage of the qualified immunity analysis by inquiring whether it would be objectively reasonable for the officer to believe that the amount of force employed was required by the situation he confronted. 533 U.S. at 205, 121 S.Ct. 2151(explaining that this rule would protect a reasonable belief that the force was required, even if that belief were mistaken). That is, the first step in the analysis is an inquiry into the objective reasonableness of the officer’s belief in the necessity of his actions, and there is no Fourth Amendment violation if the officer can satisfy this standard. See Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997) (explaining that “it is the need for force that is at the heart of the Graham factors”).
The second step of the analysis, which the court reaches only if it determines that the alleged conduct violates a clearly-es *903 tablished constitutional right, is to inquire whether the officer was reasonable in his belief that his conduct did not violate the Constitution. This step, in contrast to the first, is an inquiry into the reasonableness of the officer’s belief in the legality of his actions. Saucier, 533 U.S. at 206, 121 S.Ct. 2151. Even if his actions did violate the Fourth Amendment, a reasonable but mistaken belief that his conduct was lawful would result in the grant of qualified immunity. Qualified immunity thus “provides ample protection to all but the plainly incompetent or those who knowingly violate the law.” Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). For the reasons outlined below, we do not need to reach the second step of the qualified immunity analysis to decide this case.
At the time of the shooting, and unlike the other police officers at the scene, the officers were operating under the mistaken impression that Officer Wilkins was a civilian threatening another civilian with a gun. Thus this case does not present the usual questions, where a given set of facts is known to all parties, and the issue on appeal is whether the defendants’ actions were prohibited by the Constitution, or whether their mistaken belief that the conduct was lawful was in fact reasonable.
It is undisputed — and the officers do not contest — that the Fourth Amendment bars the use of deadly force against a fellow police officer effecting an arrest, and that there could be no reasonable mistake about this prohibition. Indeed, in Jensen v. City of Oxnard, 145 F.3d 1078 (9th Cir.), cert. denied, 525 U.S. 1016, 119 S.Ct. 540, 142 L.Ed.2d 449 (1998), we held that “it was clearly established that police officers retain their Fourth Amendment rights,” 145 F.3d at 1085, and obvious from common sense that the decedent police officer in that case “had the right to be free from an unreasonable seizure even from a fellow officer in the course of police work.” Id. at 1086.
But it is equally uncontested that the officers did not believe that they were shooting a police officer. The crucial question, therefore, is whether their mistaken belief that Wilkins was a civilian was reasonable under the circumstances. Scarrott and Koponen could not have been reasonably mistaken as to the legality of their actions had they realized that Wilkins was a police officer. As a result, the officers’ entitlement to summary judgment is determined solely by the application of the first stage of the qualified immunity analysis.
The objective reasonableness of the officers’ conduct in this case turns on their mistake of fact with regard to Officer Wilkins’ status and purpose at the scene that night. In turn, whether this mistake of fact was reasonable depends on which version of the facts is accepted by a jury. We emphasize that our decision here does not affirm a reflexive denial of summary judgment whenever a material issue of fact remains to be resolved, a practice which the Supreme Court rejected in Saucier. Even applying the step-by-step qualified immunity analysis outlined in Saucier, there is no question whether the officers’ actions in this case violated clearly established law. They did. The only question for resolution is whether their belief in the necessity of their actions was objectively reasonable. That is, was it reasonable for them not to understand that the person they were shooting was another police officer? Because the answer to that question depends on disputed issues of material fact, it is not a legal inquiry, but rather a question of fact best resolved by a jury. See Santos v. Gates, 287 F.3d 846, 855 n. 12 (9th Cir.2002) (finding it premature to decide the qualified immunity issue “because whether the officers may be said to *904 have made a ‘reasonable mistake’ of fact or law may depend on the jury’s resolution of disputed facts and the inferences it draws therefrom”) (internal citation omitted). See also Curley v. Klem, 298 F.3d 271, 278 (3d Cir.2002) (acknowledging that “the existence of disputed, historical facts material to the objective reasonableness of an officer’s conduct will give rise to a jury issue,” noting that the prohibition is consistent with the Saucier analytical framework, and citing cases from all other circuits to support the notion of a “general prohibition against deciding qualified immunity questions in the face of disputed historical facts”).
This case presents a complicated factual situation, in which the issues that are likely to prove dispositive are hotly disputed. If resolved in favor of the Wilkinses, these issues of material fact would support a finding that Scarrott and Koponen violated Wilkins’ clearly established Fourth Amendment right to be free from unreasonable seizure by excessive force. Where the officers’ entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate. See Saucier, 533 U.S. at 216, 121 S.Ct. 2151(Ginsburg, J., concurring) (“Of course, if an excessive force claim turns on which of two conflicting stories best captures what happened on the street, Gmham will not permit summary judgment in favor of the defendant official.”). We affirm the district court’s denial of summary judgment.
AFFIRMED.

. Appellees are the decedent Wilkins’ estate, his parents, his widow and child (hereinafter "the Wilkinses"). References to “the Wilkins-es" are therefore to the parties who are the appellees in this case; references to "Wilkins" are to the decedent whose Fourth Amendment right was allegedly violated by the officers.