Benito Julian LUNA, Plaintiff—
Appellee,

v.

Michael THURIEN, Sacramento
County Sheriff's Officer,
Defendant—Appellant,

and

Sacramento County Sheriff's Department; Wiest, Sergeant; Sacramento County Jail, Medical Department; Herrera; Harns; Lou Blanas; K. Perkes, Defendants.

No. 04–15120.
DC No. CV 02–0706 DFL.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 2005.

Decided April 27, 2005.

Benito Julian Luna, MCSP—Mule Creek State Prison, Ione, CA, pro se.

Thomas R. McCarthy, Jones Day, Washington, DC, for Plaintiff–Appellee.

Jesse M. Rivera, Moreno and Rivera, Sacramento, CA, for Defendant-Appellant and Defendants.

Before BRIGHT,* TASHIMA, and CALLAHAN, Circuit Judges.

MEMORANDUM**

Pro se litigant Benito Julian Luna brought a 42 U.S.C. § 1983 action against Sacramento County Sheriff's Officer Michael Thurien, alleging that Thurien vio-

---

* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

lated Luna's Fourteenth Amendment rights by allowing two inmates to enter unescorted into an area where total-separation inmate Luna was showering. The two unescorted inmates attacked Luna, causing him to suffer serious injuries including a broken hand. The district court denied Thurien's motion for summary judgment. Thurien appeals, contending that the district court erroneously determined that: (1) a genuine issue of material fact regarding Thurien's state of mind precluded summary judgment in his favor; and (2) Thurien was not entitled to summary judgment based on qualified immunity.

We lack jurisdiction to address Thurien's first contention. *Johnson v. Jones*, 515 U.S. 304, 307, 313, 319–20, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Wilkins v. City of Oakland*, 350 F.3d 949, 952 (9th Cir.2003). Accordingly, the appeal must be dismissed as to that contention. We have jurisdiction, however, to consider his second contention, but only insofar as it turns on an issue of law. *Id.* at 951–52. Accordingly, we must consider whether Thurien is eligible for qualified immunity under Luna's version of the disputed facts. *Id.* at 952. The district court's denial of summary judgment based on qualified immunity is reviewed de novo. *Id.* at 952, 954.

During the events in question, Luna was an inmate at the Sacramento County Jail. His version of events is as follows. Luna was classified as a total separation inmate because of his former affiliation with a Northern Mexican gang. Total-separation inmates are separated from other inmates at all times and are housed in a separate unit for their own protection. On the evening of October 4, 2001, Luna was in his cell in the total separation unit on the 7–East floor. Thurien was the control/floor officer on duty at the pertinent times that evening, controlling inmates' entry and exit from their cells and common areas of the unit. Thurien released Luna from his cell to allow Luna to "program" (*i.e.*, to shower, shave, etc., in the common area of the unit) for one hour. Approximately 30–40 minutes into Luna's program time, two inmates arrived at the unit for reclassification because they had started a fight in another unit earlier in the day. Thurien released the two unescorted inmates, who were affiliated with a gang that rivaled Luna's former gang, into the common area of the unit, after which they attacked Luna in the shower area. Luna sustained serious injuries in the ensuing fight.

Luna alleges that Thurien deliberately released the two inmates in order to provoke a fight, as retaliation for Luna's testimony against jail officers in an earlier court case, and to provide amusement for jail officers witnessing the fight. He also alleges that Thurien knew of Luna's prior gang affiliation and the gang affiliation of the other two inmates.

Accepting Luna's version of events,[1] we must determine whether Thurien was entitled to qualified immunity from Luna's

---

1. While acknowledging that Thurien's actions were "in contravention of" the County Jail's total-separation policy, Dissent at 384, the dissent asserts that Thurien's actions in "order[ing] the reclassified inmates to their cells without officer escort while Luna was programming" were in accordance with another jail policy. *Id.* at 383, 384. While it is true that Thurien makes the conclusory allegation in his declaration that his actions were "pursuant to jail policy," a copy of whatever poli-

cy he was referring to is not a part of the record, nor is there any other elaboration of what that policy was. Thus, to credit that vague "policy" over the clear duty enunciated by the total-separation policy, would be to construe the facts in the light most favorable to Thurien, something we cannot do. We therefore disagree with the dissent's conclusion that "Thurien was simply doing his job in accordance with jail policy." *Id.* at 385.

suit. The threshold question in this inquiry is whether the alleged facts show that Thurien's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If so, we must then determine whether that right was clearly established at the time of the incident. *Id.* A constitutional right was clearly established if it would have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Because Luna was a pretrial detainee at the time of the incident, his claim arises under the Fourteenth Amendment. *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998). We apply the same standards to such claims as to prisoners' claims under the Eighth Amendment. *Id.* The Eighth Amendment requires prison officials to provide humane conditions of confinement and imposes a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832–33, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official violates the Eighth Amendment if he shows deliberate indifference to a substantial risk of serious harm to an inmate. *Id.* at 828. Deliberate indifference means that the prison official has subjective knowledge that a substantial risk of serious harm exists. *Id.* at 837.

Thurien's release of two unescorted members of a rival gang into the common area of the total separation unit while Luna was showering there exposed Luna to a substantial risk of serious harm. Under Luna's version of the facts, reasonable inferences support that Thurien knew of the inmates' rival gang affiliations and released the two unescorted inmates with deliberate indifference to the substantial risk that a two-on-one fight would ensue. Thurien therefore had subjective knowledge of the serious risk to which Luna was exposed. The facts alleged thus establish a violation of Luna's Fourteenth Amendment rights.

Because the facts construed in Luna's favor establish that Thurien's conduct violated a constitutional right, we must ask whether that right was clearly established in that it would have been clear to a reasonable officer in Thurien's position that his conduct was unlawful. By the time of the incident in question, the Supreme Court's decision in *Farmer v. Brennan* had clearly established that the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *See* 511 U.S. at 832–33; *see also Frost,* 152 F.3d at 1128 (stating in 1998 that Eighth Amendment standards apply to the Fourteenth Amendment claims of pretrial detainees). Thus, Thurien could not reasonably have believed that it was lawful for him to be deliberately indifferent to the risk of serious harm to Luna by exposing him to attack by other inmates.

Because the facts construed in Luna's favor establish a violation of Luna's clearly established rights under the Fourteenth Amendment, Thurien is not entitled to qualified immunity. Accordingly, the district court's summary judgment denying qualified immunity is affirmed. Luna shall recover his costs on appeal.

**DISMISSED in part and AFFIRMED in part.**

CALLAHAN, Circuit Judge, dissenting.

I respectfully dissent from the majority's determination that Officer Thurien is not entitled to qualified immunity. I am obliged to begin with the premise that "[q]ualified immunity is the rule, not the exception." *Rowe v. Schreiber,* 139 F.3d 1381, 1385 (11th Cir.1998). Under the sec-

ond prong of the *Saucier*[1] analysis, a reasonable officer in Thurien's position would not have known under clearly established law that his conduct violated the Constitution. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), encompassing both mistakes of fact and mistakes of law. *Rudebusch v. Hughes,* 313 F.3d 506, 514 (9th Cir.2002).

Here, there are two jail policies resulting in a potential conflict: one that requires the total separation of Luna from other inmates, and the other, which called for Thurien to order the reclassified inmates to their cells without officer escort while Luna was programming. There is no showing that by merely following the first policy, resulting in the contravention of the second policy, Officer Thurien knowingly violated the law or acted in such a patently incompetent manner as to fall outside the protection of qualified immunity. In addition, there is no case law defining the reasonable conduct of a correctional officer when having to choose between two competing jail policies.

The majority overlooks important undisputed facts establishing that Officer Thurien acted in a reasonable manner in light of the circumstances presented. When viewing the factual allegations in the light most favorable to Luna, it remains undisputed that Thurien was the only correctional officer on duty at the time Luna was programming and when the reclassified inmates appeared at Officer Thurien's control window. Also undisputed is the fact that Officer Thurien, acting pursuant to jail policy, ordered the reclassified prisoners to their newly assigned cells. Being the only officer on duty at the time, Thurien could not reasonably be expected to leave his control booth to escort the reclassified inmates to their assigned cells.

Instead, acting pursuant to jail policy, Thurien ordered these inmates to their cells so that he could continue his monitoring function of the prison floor.[2] Perhaps, with the benefit of hindsight, one might conclude that an officer in Thurien's position should have called for back-up so that he could have escorted the reclassified inmates to their cells. Hindsight, however, is not the standard by which to judge whether a correctional officer acted reasonably.[3] *See Whitley v. Albers,* 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ("In th[e correctional] setting, a deliberate indifference standard does not ... convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance."). On the facts of this case, I am unable to conclude that Thurien acted in a manner that any reasonable officer would have considered unlawful.[4]

---

1. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

2. Insofar as Thurien's alleged actions were compelled by jail policy, thus removing discretion from his hands, perhaps the intended target of Luna's complaint is not Officer Thurien, but those who are responsible for establishing and administering the jail policy. Luna, however, has failed to allege this theory of liability, and I am therefore unprepared to say whether such a jail policy qualifies as a violation of the Constitution.

3. This is not the first case where only one jailer is left on duty. Such a practice does not appear to be uncommon amongst jails. *See, e.g., Cagle v. Sutherland,* 334 F.3d 980, 988–89 (11th Cir.2003) ("[P]olicy of only having one nighttime jailer cannot be deliberately indifferent[.]").

4. Available case law does not squarely deal with the facts presented here. Both the plaintiff and the majority cite *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), which held that the Con-

Officer Thurien was simply doing his job in accordance with jail policy. In these circumstances, it cannot be said that he was "plainly incompetent" or "knowingly violate[d] the law." *Malley*, 475 U.S. at 341. Accordingly, I would hold that Officer Thurien is entitled to qualified immunity.

stitution requires correctional authorities to provide humane conditions of confinement and to protect prisoners from violence at the hands of other prisoners. *Id.* at 832–33. That case, however, also held that "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into [a] constitutional liability...." *Id.* at 834 (citations omitted). The Court observed that judicial review of such matters requires "due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.' " *Id.* at 844–45 (quoting *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir.1979) (Kennedy, J.)). Plaintiff has, in fact, presented nothing to show that a reasonable jailer would have known that Officer Thurien's actions—pursuant to jail policy, ordering without personally escorting the re-

classified inmates to their cells—violated the plaintiff's constitutional rights. To the contrary, when correctional officials follow policy in performing their work, courts have recognized that qualified immunity applies. *See Yellow Horse v. Pennington County*, 225 F.3d 923, 927–28 (8th Cir.2000) (affirming summary judgment for prison guard because inmate could point to no evidence showing failure to follow prison policies when releasing inmate from suicide watch); *see also Maxy v. Weissenberger*, No. 03–C–624–C, 2004 WL 2810097, **6, 2004 U.S. Dist. LEXIS 24786, at *18–19 (D.Wis., Dec. 3, 2004) (observing that correctional officials followed a jail policy and that "[t]heir failure to disregard jail rules during the ... period highlighted by plaintiff does not constitute deliberate indifference").