Christine **VILLEGAS**, a minor, by and through her Guardian ad Litem, Miguel Villegas; Ricezen Villegas, a minor, by and through his Guardian ad Litem Miguel Villegas; Daniel Villegas, a minor, by and through his Guardian ad Litem Miguel Villegas; and Estate of Bernie Cervantes Villegas, Plaintiffs,

v.

**CITY OF ANAHEIM; Anaheim Police Department; and John Welter, Defendants.**

Case No. SACV 12–02013–CJC(ANx).

United States District Court, C.D. California, Southern Division.

Feb. 24, 2014.

Dana L. Douglas, Diana Lopez, James F. Rumm, Douglas, Lopez & Rumm LLP, Orange, CA, Francis Xavier Flynnc, Adam L. Salamoff, Federico Castelan Sayre, Sayre and Levitt LLP, Santa Ana, CA, for Plaintiffs.

Moses W. Johnson, IV, Anaheim City Attorneys Office, Anaheim, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

CORMAC J. CARNEY, District Judge.

While responding to a report of a suspected drug dealer with a shotgun outside an apartment complex, officers of the Anaheim Police Department encountered an individual later identified as Bernie Cervantes Villegas at the complex holding a long-barrel gun. After Mr. Villegas refused repeated commands to drop his weapon and then lifted the gun off the ground, Officer Nick Bennallack fired five rounds at Mr. Villegas, striking and killing him. Mr. Villegas's family[1] filed this action under 42 U.S.C. § 1983, asserting excessive force in violation of the Fourth Amendment and related state law claims. Defendants, the City of Anaheim and the Anaheim Police Department (together, "APD"), former APD Police Chief John Welter, and APD Officer Nick Bennallack (collectively, "Defendants"), filed the instant motion for summary judgment. (Dkt. No. 18 ["Defs.' MSJ"].) The Court finds that, in light of the information known to the officers and the totality of the circumstances surrounding the rapidly developing incident at the apartment complex, the use of deadly force against Mr. Villegas was objectively reasonable. Defendants' motion is GRANTED.[2]

■ The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In a § 1983 action against a law enforcement officer, the officer "will be denied qualified immunity ... only if (1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir.2011) (citing *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

■ Because this case involves claims of excessive force in violation of the Fourth Amendment, the constitutional analysis is governed by the "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Tennessee v. Garner*, 471 U.S.

---

1. Plaintiffs are Mr. Villegas's estate and his surviving children, Christine Villegas, Ricezen Villegas, and Daniel Villegas (collectively, "Plaintiffs").

2. In their opposition, Plaintiffs concede that summary judgment is appropriate on their claims for negligent hiring, training, and retention, as well as their claims under 42 U.S.C. § 1983 for denial of medical care, failure to train, and municipal liability pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). (*See* Dkt. No. 23 ["Pls.' Opp'n"] at 12, 15, 17.) Accordingly, summary judgment is GRANTED in favor of Defendants as to these claims.

1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Determining whether a particular use of force is reasonable under the Fourth Amendment "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (internal citation and quotation marks omitted). The use of deadly force is reasonable "if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir.1994) (quoting *Garner*, 471 U.S. at 3, 105 S.Ct. 1694.); *see also Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir.2007). Determining whether an officer's use of force was reasonable requires consideration of all the circumstances known to the officer, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Moreover, the reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.2001) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). The court must allow for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97, 109 S.Ct. 1865.

Where reasonableness turns on disputed issues of material fact it is "a question of fact best resolved by a jury." *Torres*, 648 F.3d at 1123 (quoting *Wilkins v. City of Oakland*, 350 F.3d 949, 955 (9th Cir.2003)). However, where the facts are undisputed and the court has drawn all reasonable inferences therefrom in favor of the nonmoving party, the objective reasonableness of an officer's conduct "is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n. 8, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).[3]

Considering the totality of the circumstances and taking the facts in the light most favorable to Plaintiffs, the undisputed evidence shows that Officer Bennallack's use of deadly force against Mr. Villegas was objectively reasonable. Office Bennallack and Officer Brett Heitmann responded to a 911 call on the evening of January 7, 2012, in which the caller reported a male subject with a shotgun standing in the visitor parking area of her apartment complex, located at 3633 W. Ball Rd., Anaheim, California. (Dkt. No. 19, Defs.' Statement of Uncontroverted Facts ["Defs.' SUF"] 1.)[4] The caller stated that she was familiar with the subject and believed he was a drug dealer. (*Id.*) Officer Bennallack and Officer Heitmann responded to the location and joined two other APD officers, Kevin Voorhis and Matthew Ellis, on a street near the apartment complex. (Defs.' SUF 3–4.) Because the call reported a subject with a shotgun, Officers Heitmann and Voorhis equipped themselves with their assigned tactical assault rifles. (Defs.' SUF 4; Dkt. No. 20–2 ["Heitmann Decl."] ¶ 9; Dkt. No.

---

3. Summary judgment is appropriate if, taking the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Torres*, 648 F.3d at 1123.

4. Unless otherwise indicated, references to Defendants' SUF are to facts not substantively disputed by Plaintiffs.

20–3 ["Voorhis Decl."] ¶¶ 2–4.) The apartment complex was arranged in a single row of units, oriented north to south, with carports making up the rear ground floor of the building. (Defs.' SUF 5–7; Dkt. No. 21, Exh. 1.) A narrow lane of concrete ran behind the buildings allowing access to the carports and a visitor parking area north of the building. (*Id.*)

The four officers proceeded on foot in a diamond formation, moving north up the concrete lane and searching and clearing each carport. (Defs.' SUF 6.) When the officers reached the north end of the apartment building they paused at its exterior corner. (Defs.' SUF 7–8.) Around the corner, beyond the officers' line of sight, was the visitor parking area where the subject with the shotgun was last seen. (Defs.' SUF 1, 7.) Officers Bennallack and Heitmann were the first to maneuver around the corner. (Defs.' SUF 8–9.) Upon rounding the corner they observed an individual, later identified as Tristan Rosal, standing near a car. (Defs.' SUF 9.) The officers shouted repeated commands: "Put your hands up" and "Show me your hands." (*Id.*) Mr. Rosal complied and fully raised his hands. (*Id.*) As the officers continued to side-step north from the corner into the visitor parking area, they observed Mr. Villegas standing next to a cinder block wall on the side of a low stairway, facing east toward the officers. (Defs.' SUF 11.) The officers saw Mr. Villegas holding[5] a long-barrel firearm and commanded him to "Drop the gun," "Drop the gun." (Defs.' SUF 11, 14; Bennallack Decl. ¶ 16.) Officer Bennallack believed that the gun Mr. Villegas was holding was a shotgun. (Defs.' SUF 11; Bennallack Decl. ¶ 13.) The officers continued to side-step northbound, and Mr. Villegas still did not comply with their repeated commands to drop the gun. (Defs.' SUF 14.) Instead, Mr. Villegas lifted the gun off the ground. (*Id.*) Officer Heitmann had his rifle at his shoulder with the safety off and was "milliseconds" away from firing, but his line of fire was interrupted by the metal stair railing. (Heitmann Decl. ¶ 20.) Officer Bennallack, who was slightly north of Officer Heitmann, fired five rounds from his handgun, striking Mr. Villegas and causing him to fall to the ground. (Defs.' SUF 16; Bennallack Decl. ¶ 18.) The officers approached and Officer Bennallack kicked the gun away from Mr. Villegas's reach. (Defs.' SUF 17.) The officers then administered chest compressions until paramedics arrived. (*Id.*) It was subsequently determined that the long-barrel firearm Mr. Villegas was holding was a BB gun. (*See* Dkt. No. 21, Exh. 2.)

Although this incident resulted in the tragic loss of a life, given the circumstances confronting the officers it was objectively reasonable for Officer Bennallack to use deadly force.[6] The officers were

---

5. Officer Bennallack recounted that the gun was initially leaning against the wall and Mr. Villegas grabbed it by the barrel when he saw the officers. (Bennallack Decl. ¶¶ 13, 16.) Officer Heitmann did not see the gun leaning against the wall, and testified that he recalled Mr. Villegas holding it by the barrel. (Heitmann Decl. ¶ 17.)

6. Because the Court finds that Officer Bennallack's conduct was objectively reasonable, Defendants are entitled to summary judgment on Plaintiffs' wrongful death claims as well. *See Hayes v. Cnty. of San Diego*, 736 F.3d 1223,

1232 (9th Cir.2013) ("Claims of excessive force under California law are analyzed under the same standard of objective reasonableness used in Fourth Amendment claims.") Indeed, the only ground argued by Plaintiffs in opposition to summary judgment on their wrongful death claims is that the claims should survive if the Fourth Amendment excessive force claim survives. (*See* Pls.' Opp'n at 12.) In addition, to the extent that Plaintiffs assert a violation of their Fourteenth Amendment substantive due process rights to familial association, they have failed to produce any evidence giving rise to an issue of material

responding to a call of a suspected drug dealer armed with a shotgun outside of a residential apartment complex. Although the weapon Mr. Villegas was holding turned out to be a BB gun, an officer could reasonably—even easily—believe the gun in question was an authentic firearm. (*See* Dkt. No. 21, Exh. 2.) The gun is made out of dark metal and has a wooden stock. (*See id.*) It does not have a bright orange tip or any similar feature that would indicate it was not an authentic, fullpower firearm. (*See id.*) Confronted with the circumstances facing Officer Bennallack on January 7, 2012, an objectively reasonable officer would reasonably believe that Mr. Villegas posed an "immediate threat to the safety of the officers or others"—the "most important factor" in the *Graham* excessive force analysis. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 872 (9th Cir.2011) (internal quotation marks omitted). Officer Bennallack was confronted with a suspected drug dealer who failed to comply with repeated commands to put his gun down and instead lifted the gun off the ground.[7] Officer Bennallack had to make a split-second decision whether Mr. Villegas was attempting to shoot him and the other police officers. Officer Bennallack made the decision that Mr. Villegas posed

such a threat, so he shot Mr. Villegas to protect himself and his fellow officers. This Court will not judge the reasonableness of Officer Bennallack's actions with the 20/20 vision of hindsight.

Officer Bennallack did what he reasonably believed he had to do at the time. The Fourth Amendment requires nothing more.[8]

---

fact that the officers' conduct was "arbitrary, or conscience shocking, in a constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (internal quotation marks omitted). This is especially so given that the officers did not have "the opportunity for actual deliberation," and thus Plaintiffs would be required to show that the officers acted with "purpose to harm," *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir.2008), which finds no support in the evidence.

7. The Court is mindful that it "must be wary of self-serving accounts by police officers when the only non-police eyewitness is dead." *Long*, 511 F.3d at 906 (citing *Scott*, 39 F.3d at 915). After carefully examining all the evidence in the record, however, the Court finds

nothing that would tend to discredit the officers' testimony. To the contrary, the officers' testimony is "internally consistent and consistent with other known facts." *See Scott*, 39 F.3d at 915.

8. Officer Bennallack is also entitled to qualified immunity under the second prong of the analysis because clearly established law in January 2012 would not have put a reasonable officer in his position on notice that using deadly force to protect himself and his fellow officers against a subject armed with a gun, who disobeyed repeated commands to drop the weapon and instead began to raise it, would violate the Fourth Amendment. *See Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1115, 1119 (9th Cir.2005).