NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 29 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

DANIEL WILLIAM CLUSE,

        Plaintiff - Appellee,

  v.

TRAVIS JAMES ROWDEN, in his
individual and official capacities,

        Defendant - Appellant,

and

COUNTY OF COCONINO, JIM
DRISCOLL, Sheriff,

        Defendants.

No. 24-2045

D.C. No.
3:21-cv-08169-SMB-DMF

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
Susan M. Brnovich, District Judge, Presiding

Argued and Submitted November 19, 2024
San Jose, California

Before: GRABER, FRIEDLAND, and BUMATAY, Circuit Judges.
Dissent by Judge BUMATAY.

    Plaintiff Daniel William Cluse brought this excessive-force action, pursuant

to 42 U.S.C. § 1983, against Coconino County and officers from the County

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Sheriff's Department, including, as relevant here, Deputy Sheriff Travis James Rowden. The district court denied in part Rowden's motion for summary judgment, which was premised on qualified immunity, and Rowden timely filed an interlocutory appeal. Exercising our jurisdiction to review de novo issues of law determining entitlement to qualified immunity, Williams v. City of Sparks, 112 F.4th 635, 642 (9th Cir. 2024), we affirm.

1. The district court ruled that there are disputed issues of material fact. The disputed facts summarized by the district court pertain primarily to what happened after Rowden used his knee to pin Plaintiff—who was, up to that moment, lying prone and face-down on the ground with arms outstretched. According to Rowden, Plaintiff immediately moved his hands under his body, twisted and turned onto his left side, and pinned his left arm and hand underneath him, actions that Rowden characterizes as Plaintiff's actively resisting arrest. But according to Plaintiff, he moved his hands and arms inward underneath his shoulders, but not downward, and only as a reflexive response to the pain caused by Rowden's jumping onto his back.

As the above summary shows, both parties agree that Plaintiff moved his hands when Rowden jumped on him. Nevertheless, the district court determined that a question of fact remains as to whether Plaintiff was still "pinned face-down

on the ground with his arms outstretched" when Rowden began to strike him in the head. Rowden argues that the district court erred in making that determination because bodycam footage plainly shows that Plaintiff's hands moved before the punches began. We agree. See id. (explaining that whether "the district court failed to review the facts in the 'light depicted in the videotape'" is a question of law (quoting Hughes v. Rodriguez, 31 F.4th 1211, 1218 (9th Cir. 2022))). In the video, Plaintiff's hands move toward his shoulders when Rowden pins him, and Plaintiff's hands are in front of his upper chest when Rowden throws the first punch.

Although the video evidence contradicts the district court in that respect, the footage does not contradict Plaintiff's assertion that he cooperated with the officers once they identified themselves and gave him instructions and that he moved his hands upward only briefly in response to sudden pain. The video also confirms Plaintiff's assertion that he was shirtless and thus had no garment to conceal a weapon near where his hands moved. By the time Rowden approached Plaintiff, Plaintiff was lying motionless on the ground, surrounded by armed officers, with his arms outstretched, as the officers had commanded. The video shows that, when Rowden applied his knee to Plaintiff's back, Plaintiff cried out in pain and his hands jerked up to his shoulders. Plaintiff's right hand is visible near his right

shoulder and, as soon as Plaintiff was turned onto his left side, Rowden struck him in the head repeatedly. By that point, the video shows that Plaintiff's hands were visible in front of his chest and were not pinned underneath him.

Because the record does not contradict Plaintiff's version of events, we must resolve all factual disputes and draw all reasonable inferences in Plaintiff's favor when analyzing whether Rowden is entitled to qualified immunity as a matter of law. Scott v. Smith, 109 F.4th 1215, 1222 (9th Cir. 2024).

2. To determine whether Rowden used unreasonable force, for purposes of evaluating qualified immunity's constitutional-violation prong, we ask "whether it would be objectively reasonable for [Rowden] to believe that the amount of force employed was required by the situation he confronted." Hart v. City of Redwood City, 99 F.4th 543, 548–49 (9th Cir. 2024) (quoting Wilkins v. City of Oakland, 350 F.3d 949, 954 (9th Cir. 2003)), reh'g en banc denied, 2024 WL 4611952 (9th Cir. Oct. 30, 2024). On that topic, the parties dispute whether Rowden had—due to the movement of Plaintiff's hands—an objectively reasonable belief that Plaintiff (1) posed an immediate threat to the officers or (2) was actively resisting arrest when Rowden began to hit him. See id. at 549 (explaining the importance of those two factors in the unreasonable-force inquiry).

Viewing all facts and reasonable inferences in Plaintiff's favor, a rational jury could find that Plaintiff neither posed a threat nor was resisting arrest and, therefore, that Rowden's use of force exceeded what was reasonable in the circumstances. See Blankenhorn v. City of Orange, 485 F.3d 463, 480 (9th Cir. 2007) (holding that a rational jury could find an officer's punches unjustified if the plaintiff did not pin his arms underneath his body); Davis v. City of Las Vegas, 478 F.3d 1048, 1055–56 (9th Cir. 2007) (ruling that an officer was not entitled to qualified immunity in part because the plaintiff did not pose an "immediate threat" to anyone's safety and was "neither actively resisting arrest nor attempting to flee").

3.  Similarly, if Plaintiff's version of the facts is believed, Blankenhorn clearly informed Rowden that punching a non-resisting and prone arrestee in the face and head with a closed fist constitutes excessive force. See Hart, 99 F.4th at 555 (describing qualified immunity's clearly-established prong); Blankenhorn, 485 F.3d at 481 (holding in 2007 that a reasonable officer was "on notice that punching [an arrestee] to free his arms when, in fact, he was not manipulating his arms in an attempt to avoid being handcuffed" constituted excessive force); see also Andrews v. City of Henderson, 35 F.4th 710, 719 (9th Cir. 2022) (holding that Blankenhorn "clearly established" that an officer uses excessive force in violation of the Fourth

Amendment by piling on top of a non-resisting suspect who was "'relatively calm'" and who posed "little threat" to the officer's safety (quoting Blankenhorn, 485 F.3d at 481)).  Additional cases involving analogous uses of force illustrate the same principle.  See LaLonde v. County of Riverside, 204 F.3d 947, 952, 959 (9th Cir. 2000) (reversing a district court's decision to grant qualified immunity when a jury could reasonably find that the officer seriously injured a prone arrestee, whose resistance had ceased, by applying his knee to the arrestee's back); Rice v. Morehouse, 989 F.3d 1112, 1124–26 (9th Cir. 2021) (concluding that forcibly throwing a passively resisting and non-threatening arrestee to the ground violated clearly established law).

**AFFIRMED.**

*Cluse v. Rowden, et al.*, No. 24-2045
BUMATAY, Circuit Judge, dissenting:

Until Congress or the Supreme Court directs otherwise, we must faithfully apply the doctrine of qualified immunity. That doctrine prevents courts and litigants from second-guessing split-second life-and-death decisions made by law enforcement officers.

Applied here, that doctrine requires reversal of the district court's denial of defendant's motion for summary judgment.

At about 3:30 in the morning, officers responded to a report of a shots-fired domestic-violence incident at Daniel William Cluse's Arizona residence. After the officers arrived on the scene and exited their vehicles, Cluse began shooting at them. An armed standoff followed, with Cluse shooting at officers from various points on the property and officers returning fire. An officer reported "hear[ing] a bullet go whizzing by [him]."

Eventually, the shooting stopped and Cluse emerged onto his front porch, apparently holding something in his hands. Officers directed him to stay in the light, put his hands up, and—eventually—walk toward the road. An officer saw that Cluse had guns in both hands. He was also wearing baggy shorts (which could conceal other weapons). Following officers' commands, Cluse dropped the guns. After many repeated commands, he made it to a point in the road where officers could arrest him.

1

Cluse walked backward until the deputies told him to stop, get on his knees, and then lie face down with his arms outstretched. The deputies repeatedly informed Cluse not to move or else he would be shot. Once Cluse was on the ground, Deputy Travis Rowden approached him and put his knee on his lower back to pin him to the ground. After Deputy Rowden knelt, bodycam footage shows that Cluse moved his arms and hands beneath his body, toward his chest. This action prevented Deputy Rowden from securing his hands or handcuffing him. Officers again told him not to move. But Cluse rolled his head and upper body side-to-side. At this point, Deputy Rowden administered short blows to his head.

First, these facts, even in the light most favorable to Cluse, preclude a claim for excessive force. *See Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1096–97 (9th Cir. 2006) (no excessive force where suspect was resisting arrest by trying to spin out of officer's grasp). Video evidence confirms that Cluse moved his hands beneath his body in a way that made securing his hands difficult. It was only *after* Cluse's hands were underneath him that Deputy Rowden started punching. Indeed, Cluse admitted several times that he moved his hands underneath his body before any blows were struck. For example, Cluse testified that, after Deputy Rowden placed his knee and hand on him, his "hands c[a]me underneath [him]."

Cluse doesn't dispute that his hands were underneath him before Deputy Rowden's blows, but instead contends that his hand movements were involuntary.

2

Even if that's true, it doesn't matter for our inquiry. That's because our task is to ask whether the amount of force employed by an officer was reasonable from a "reasonable officer['s]" perspective. *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Cluse fired multiple weapons at officers in the dead of night, officers believed other armed suspects may be targeting them as well, Cluse was wearing baggy shorts (which could conceal weapons), and then Cluse put his hands beneath his body, which prevented officers from seeing if he was reaching for a weapon or from securing them. Even if Cluse's hand movements were an involuntary reaction, it was reasonable for officers to believe he was resisting arrest or that he posed a risk to their safety. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.").

Second, there's no clearly established law in this case. Neither *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055–56 (9th Cir. 2007), nor *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007), govern here. In *Davis*, the suspect was already handcuffed before officers slammed his head into a wall several times, pinned him against the floor, and punched him in the face, fracturing his neck. 478

F.3d at 1051–52. There, the officers knew the suspect was unarmed. *Id.* at 1054. Here, by contrast, Cluse was not yet handcuffed and his hands were not even secured while officers didn't know if he was armed.

The *Blankenhorn* case involved a "gang tackle," punches, and hobble restraints even though "Blankenhorn did not attempt to prevent the officers from handcuffing him." 485 F.3d at 478. That makes all the difference. Here, a reasonable officer could think that Cluse was resisting handcuffing by placing his hands beneath his body. Not to mention that Blankenhorn's alleged crime was *misdemeanor trespass at a mall*. *Id.* The "facts and circumstances confronting" the arresting officers, *Graham*, 490 U.S. at 397, in a mall trespass case are far different from the facts and circumstances here, where the suspect shot at deputies with multiple firearms over a half-hour period in a wooded area and then disregarded police commands and approached police with guns in both hands and then moved his hands away from an officer trying to handcuff him. No case establishes that an officer acts unreasonably by applying force when a suspect moves his hands away in a manner that makes handcuffing more difficult. And nothing in *Davis* or *Blankenhorn* or any other case informed—let alone *clearly* informed—Rowden that his actions here constituted excessive force.

4

Nor do the other cases cited by the majority support the denial of qualified immunity. Both cases involved much tamer offenses than the one police were responding to here and far more severe force.

In one case, police officers responded to an excessive-noise complaint and used pepper spray on the resisting plaintiff. *LaLonde v. County of Riverside*, 204 F.3d 947, 952–53 (9th Cir. 2000). Although the pepper stray stopped the plaintiff's resistance, an officer still forcefully put his knee on the plaintiff's back. The action caused severe injury requiring immediate medical attention and caused the plaintiff pain for months after the incident. *Id.* This is nothing like the few punches thrown at Cluse so that officers could handcuff him.

In the other case, police officers threw the plaintiff onto the ground after he declined to produce his driver's license after being stopped for failing to signal before a lane change. *Rice v. Morehouse*, 989 F.3d 1112, 1116 (9th Cir. 2021). Even though the plaintiff was not resisting arrest and the offense was minor, officers tripped him and forcibly threw him to the ground. *Id.* at 1117. The plaintiff landed face-first on the pavement and suffered extreme pain. *Id.* While the plaintiff laid on the ground, officers repeatedly struck and kneed him, wrenched his arms and shoulders, and twisted his fingers. *Id.* Only then did officers handcuff the plaintiff. *Id.* Again, here, it is undisputed that Cluse positioned his hands in a way officers could not handcuff.

5

It takes some imagination to compare *Rice* and *LaLonde* to this case.  I decline to indulge that fancy.

I respectfully dissent.